Richard W. Wallace, J.
A tenant must himself have a residual possessory interest in a leased premises in order to invest a.subtenant or successor with legalized possession (Yorkshire Towers Co. v. Hearsey, N. Y. L. J., July 30, 1971, p. 2, col. 1; Teachers Coll, of Columbia Univ. v. Claussell, 67 Misc 2d 826). However where such interest exists, the overlandlord’s lack of knowledge of the transfer of possession does not convert the transferee into a “ squatter,” particularly where, as here, such ignorance results from a studied indifference to the consequences of an established pattern of subleasing.
Landlord herein brings a summary proceeding for nonpayment of rent allegedly due under a lease with respondent dated August 14, 1971. Respondent Williams first occupied the apartment (70) the preceding April as the subtenant of one Sharetts, who since 1967 had been the holder of leases from petitioner upon three separate multi-bedroom apartments in this building, including apartment 70. There was evidence that this particular building was proximate to the academic flyway of Columbia University, and that the three apartments under lease to Sharetts, and further subleased by him, were often tenanted by students whose migrations waxed and waned with the academic seasons. At no time did the landlord show any concern with the scope of Sharetts ’ subleasing activities, or the character and identity of his subtenants.
Just prior to the execution and delivery of the new lease between petitioner and respondent, the middleman, Sharetts, 1 ‘ surrendered ’ ’ 7:C to petitioner, a circumstance which petitioner claims entitled it to treat Williams as a stranger to, or “■squatter” upon the premises, the premises themselves “ vacant ”, and therefore subject to a leasing arrangement free of rent control, because of a new letting after July 1, 1971 (L. 1971, ch. 371, § 3, subd. [i]).
The Emergency Housing Rent Control Law (L. 1946, ch. 274, § 2, subd. 6, as amd.) defines “landlord”, inter alia, as a *906 “ sublessor Subdivision 7 of the statute defines “tenant” as a sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodation It therefore follows that prior to July 1, 1971, under the terms of the statute, Sharetts was the ‘ ‘ landlord ’ ’ and respondent Williams “ The tenant ” of Apt. 7C.
Because Williams was the tenant of this housing accommodation prior to July 1, 1971, the apartment is subject to rent control, and because the rent reserved in the lease dated August 14, 1971, between the parties exceeds the legal maximum rent, the lease is a legal nullity.
Landlord argues that since it had no knowledge of Williams prior to the execution of the lease, Williams is thereby to be regarded as a “ squatter ” prior to the execution of the lease, and therefore outside the protective mantle of rent control. The contention is a non seqmtur. The question here is not whether petitioner’s officer, Mr. Fruchtbaum, learned of Williams’ identity prior to July 1, but rather whether, as a result of the subleasing authority for over four years granted by petitioner to Sharetts with respect to three multiple bedroom apartments, petitioner is not to be charged with whatever knowledge the slightest inquiry and diligence would have disclosed.
The answer is clear. By remaining utterly disinterested in the character and scope of Sharetts ’ subleasing operations, petitioner cannot destroy the legal protection which vested in Sharetts ’ subtenants. Petitioner cannot avail itself of the fruits of a subleasing arrangement prior to July 1, 1971, and then conveniently ignore it and bring about its destruction by a providentially timed surrender of the prime lease. Because Sharetts had authority to sublet, Williams “ entered into possession with permission of one entitled to possession. ’ ’ (Stengel v. Morehead, 194 Misc. 1027.) Such a person is not a squatter or intruder. (Williams v. Alt, 226 N. Y. 283.)
Accordingly this petition is dismissed, with costs, without prejudice, however, to further proceedings to collect the legal maximum rent, with due regard to the effect, if any, of Executive Order No. 11615 (Aug. 20, 1971), and Office of Emergency Preparednessi Beg. No. 1 (36 Fed. Reg, 16515 [1971], § 2, subd. [c]) (the Presidential rent “freeze ” order). The counterclaims were dismissed on consent during trial with prejudice.